1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE RIDER,<br>CDCR #T-13317,<br><br>Plaintiff,<br><br>vs.<br><br>D. SANCHEZ, Correctional Officer; R. OWENS, Correctional Sergeant; A. SILVA, Correctional Officer; A. MIRANDA, Correctional Lieutenant; M. POLLARD, Correctional Warden,<br><br>Defendants. | Case No.:  3:20-cv-02028-DMS-RBB<br><br>**ORDER:**<br><br>**1)  GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**AND**<br><br>**2)  DISMISSING CLAIMS FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)** |

Plaintiff Andre Rider, currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California has filed a civil rights complaint pursuant to 42 U.S.C. § 1983.  Plaintiff has not paid the filing fees required by 28 U.S.C. § 1914(a), but instead has filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* ECF No. 2.

/ / /

/ / /

## I.     IFP Motion

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). However, prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

In support of his IFP Motion, Plaintiff has submitted a copy of his CDCR Inmate Statement Report as well as a Prison Certificate completed by a trust account official at RJD. *See* ECF No. 2 at 4–7; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show he carried an average monthly balance of $54.18, maintained $54.17 in average monthly deposits to his trust account for the 6-months preceding the filing of this action, but had an available balance of only $.30 to his credit at the time of filing. *See* ECF No. 2 at 5.

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses his initial partial filing fee to be $10.84 pursuant to 28 U.S.C. § 1915(b)(1). However, the Court will direct the Secretary of the CDCR, or her designee, to collect this initial filing fee *only if sufficient funds are available in Plaintiff's account at the time this Order is executed*. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

## II. Screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a preliminary screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir.

2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 556 U.S. 544, 570 (2007)); *Wilhelm*, 680 F.3d at 1121.

"Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

    B.    <u>Plaintiff's Allegations</u>

On September 1, 2019, Defendant Sanchez "came to Facility 'A' yard" and informed Plaintiff that he had been "selected" to give a "urinalysis test." (Compl. at 7.) Plaintiff told Sanchez that he should not be on the "mandatory drug testing list" but claims Sanchez told him "I don't have time to answer any bullshit question right now." (*Id.*) Plaintiff alleges Sanchez informed him that if he refused to take the test, an "RVR

115 will be written." (*Id.*)   Plaintiff agreed to take the test but asked to speak to the Sergeant.  (*See id.* at 7-8.)

Sanchez told the "tower officer to open" Plaintiff's cell, "asked Plaintiff to step out [of] the cell, and turn and face the cell door."  (*Id.* at 8.)  Sanchez put Plaintiff in handcuffs and told Plaintiff he was "a real asshole and that Plaintiff was always causing a lot of bullshit around here."  (*Id.*)  Plaintiff claims Sanchez then tried to force him to take the urinalysis test "in a very dirty, unclean area."  (*Id.*)

When Plaintiff asked again to speak to a sergeant, he alleges Sanchez responded by "intentionally throw[ing] Plaintiff to the ground, real hard."  (*Id.*)  Plaintiff claims Sanchez knew he uses a walker or cane and when he asked for a walker or cane, Sanchez purported responded that he did not care and continued calling Plaintiff names.  (*See id.*)  Sanchez, with another officer, picked Plaintiff up off the floor and conducted the urinalysis test.  (*See id.*)

Plaintiff alleges he was "suffering pain from being thrown to the ground" and asked to "go to medical."  (*Id.* at 9.)  However, Sanchez told him "not right now."  (*Id.*)

On September 9, 2019, Defendant Silva was "assigned to Plaintiff's case" as an "assistant to inmates for serious rules violation."  (*Id.* at 10.)  Plaintiff claims Silva told him that he would "be the only one to handle the investigation" regarding Plaintiff's RVR.  (*Id.*)  Plaintiff alleges Silva refused to interview Plaintiff's witnesses which "would have made a difference in the outcome of Plaintiff's RVR 115 hearing."  (*Id.*)

On October 1, 2019, Silva and Defendant Miranda, the hearing officer, "conspired" prior to the hearing to find Plaintiff guilty of the rules violation.  (*Id.* at 10-11.)  Plaintiff claims Miranda told him "I'm going to believe my officers, over all inmates" and found him guilty.  (*Id.* at 11.)  As a result of the guilty finding, Plaintiff lost thirty (30) days of yard privileges and lost ninety (90) days of good time credit.  (*See id.*)

Plaintiff seeks declaratory relief, "general damages according to proof," punitive damages, compensatory damages, and attorney fees.  (*Id.* at 14.)

C.    42 U.S.C. § 1983

"To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace*, Inc., 698 F.3d 1128, 1138 (9th Cir. 2012); *see also Rawson v. Recovery Innovations, Inc.*, No. 19-35520, __ F.3d __, 2020 WL 5405684, at *3 (9th Cir. Sept. 9, 2020) ("Pursuant to § 1983, a defendant may be liable for violating a plaintiff's constitutional rights only if the defendant committed the alleged deprivation while acting under color of state law.").

D.    Eighth Amendment claims

As an initial matter, Finally, the Court finds Plaintiff's Complaint contains "sufficient factual matter, accepted as true," to state an Eighth Amendment claim against Sanchez for relief that are "plausible on its face," *Iqbal,* 556 U.S. at 678, and therefore, sufficient to overcome the "low threshold" set for sua sponte screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("To prove a violation of the Eighth Amendment a plaintiff must 'objectively show that he was deprived of something "sufficiently serious," and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety.'" (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 844 (1994)); *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment); *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (for claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.").

E.    Fourteenth Amendment Due Process Claims

Plaintiff also claims that he was denied due process with respect to the issuance of a rules violation report and the disciplinary proceeding arising from the report. (*See* Compl. at 9-11.)  Plaintiff alleges Silva refused to listen to his witnesses and Miranda

told him that was going to find him guilty regardless of Plaintiff's testimony.  (*See id.*)
As a result of the guilty finding, Plaintiff lost thirty (30) days of yard privileges and lost
ninety (90) days of good time credit.  (*See id.*)

The Fourteenth Amendment provides that "[n]o state shall ... deprive any person of
life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The
requirements of procedural due process apply only to the deprivation of interests
encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of
Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a
plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a
deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v.
Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*,
995 F.2d 898, 904 (9th Cir. 1993)).

A prisoner is entitled to certain due process protections when he is charged with a
disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing
*Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)). "Such protections include the rights
to call witnesses, to present documentary evidence and to have a written statement by the
fact-finder as to the evidence relied upon and the reasons for the disciplinary action
taken." *Id.* These procedural protections, however, "adhere only when the disciplinary
action implicates a protected liberty interest in some 'unexpected matter' or imposes an
'atypical and significant hardship on the inmate in relation to the ordinary incidents of
prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Ramirez v.
Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Although the level of the hardship must be determined on a case-by-case basis, and
"[i]n *Sandin's* wake the Courts of Appeals have not reached consistent conclusions for
identifying the baseline from which to measure what is atypical and significant in any
particular prison system," *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), courts in the
Ninth Circuit look to:

1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013). Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

Plaintiff's due process claims require sua sponte dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) because he fails to allege facts sufficient to show that the deprivations he suffered as a result of his disciplinary conviction, *i.e.*, 90 days of lost good time credit and 30 days of yard privileges, *see* Compl. at 11, imposed the type of "atypical and significant hardships" required by *Sandin* to invoke liberty interests entitled to *Wolff's* procedural safeguards. *Sandin,* 515 U.S. at 484; *see e.g., Salinas v. Montgomery*, No. 3:19-cv-0744-AJB-RBB, 2019 WL 2191349, at *5 (S.D. Cal. May 21, 2019) (finding allegations that inmate was "assessed a good-time credit loss of 90 days" insufficient to show atypical and significant hardship); Cal. Code Regs., tit. 15 § 3044(f)(2) (explaining "Privilege Group C" "privileges and non-privileges"); *Sanchez v. Miller*, 2016 WL 536890, at *5 (S.D. Cal. 2016) (concluding that time-limited "C-status deprivations" did not constitute hardship that is "atypical and significant 'in relation to the ordinary incidents of prison life.'") (quoting *Sandin,* 515 U.S. at 484), *report and recommendation adopted,* 2016 WL 524438 (S.D. Cal. 2016); *Randle v. Melendrez*, 2017 WL 1197864, at *4 (C.D. Cal. 2017) (finding "four months in administrative segregation as a result of the false RVR," during which plaintiff was deprived of contact visits, "packages, canteen, unrestricted yard, phone calls and personal property" insufficient to implicate a protected liberty interest under *Sandin*), *report and recommendation adopted*, 2017 WL 1199719 (C.D. Cal. 2017)).

/ / /

Therefore, the Court finds that Plaintiff has failed to allege a Fourteenth Amendment due process claim upon which relief may be granted.

F.    Personal Liability – Defendants Owens & Pollard

Plaintiff alleges that Defendant Owens was the "Facility Program [Sergeant]" whose duty is to "oversee and enforce the CDCR written rules by policy and procedures." (*See* Compl. at 9.)  Plaintiff also names M. Pollard, RJD Warden "under CDCR post order and responsibility."  (*Id.* at 6.)  Plaintiff claims he filed an administrative grievance regarding the claims in the Complaint, but Pollard denied his appeal at the second level of review.  (*See id*. at 11, 23-24.)

But simply "'[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation.'" *Ellington v. Clark*, 2010 WL 3001427, at *2 (E.D. Cal. Jul. 29, 2010) (quoting *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). And a prison official's allegedly improper processing of grievances or appeals, without more, does not provide an independent basis for section 1983 liability. *See Ramirez*, 334 F.3d at 860 (prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted); *Davis v. Penzone*, 2017 WL 8792541, at *5 (D. Ariz. July 25, 2017) (prison administrators and other supervisors are not per se liable for an alleged violation of a prisoner's federal constitutional rights simply by failing to grant his "grievances or grievance appeals."). Thus, because Plaintiff alleges Defendants Owens and Pollard's only involvement was their failure to intervene or correct the alleged due process violations, he fails to state a claim against them as well. *See* 28 U.S.C. § 1915(e)(2); § 1915A(b); *Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Moreno v. Ryan*, 2017 WL 2214703, at *3 (D. Ariz. May 19, 2017) (failure to intervene on the prisoner's behalf to remedy the allegedly unconstitutional underlying behavior does not by itself amount to an independent or freestanding constitutional violation for purposes of § 1983).

/ / /

9

H.    *Heck* Bar

Finally, the Court cautions Plaintiff that even if he can allege additional facts sufficient to plausibly show Defendants violated his due process rights with respect to his RVR and disciplinary conviction, he may not be able to proceed with these claims.

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for writ of habeas corpus, 28 U.S.C. § 2254, and a complaint under ... 42 U.S.C. § 1983." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Id.* (internal citation omitted). A prisoner's claims are within the core of habeas corpus if they challenge the fact or duration of his conviction or sentence. *Nettles v. Grounds*, 830 F.3d 922, 934 (9th Cir. 2016) (en banc); *Ramirez*, 334 F.3d at 858.

In *Heck v. Humphrey*, the United States Supreme Court held that a section 1983 claim cannot proceed when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 486-87. Accordingly, "a state prisoner's [section] 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). *Heck* requires the plaintiff in a § 1983 action "first … to prove that his conviction had been invalidated in some way." *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (citing *Heck*, 512 U.S. at 486). "This favorable-termination requirement, the Court explained, applies whenever 'a judgment in favor of the plaintiff would necessarily imply' that his prior conviction or sentence was invalid." *Id.* (quoting *Heck*, 512 U.S. at 487).

*Heck*'s bar applies in the prison disciplinary context if the "defect complained of by [Plaintiff] would, if established, necessarily imply the invalidity of the deprivation of

[his] good-time credits[,]" *Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Nonnette v. Small*, 316 F.3d 872, 875 (9th Cir. 2002), and if the restoration of those credits "necessarily" would "affect the duration of time to be served." *Muhammed*, 540 U.S. at 754; *see also Nettles*, 830 F.3d at 929 n.4 ("*Heck* applies only to administrative determinations that 'necessarily' have an effect on 'the duration of time to be served.' " (citations omitted)); *Ramirez*, 334 F.3d at 856 ("[T]he applicability of [*Heck*'s] favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement.").

Here, a judgment in Plaintiff's favor would necessarily imply the invalidity of his disciplinary conviction and his subsequent credit loss. *See Edwards*, 520 U.S. at 648 (finding prisoner's claims for declaratory relief and money damages "based on allegations of deceit and bias on the part of the decisionmaker … necessarily imply the invalidity of the punishment imposed, [and are] not cognizable under § 1983.").

Therefore, should Plaintiff chose to proceed by amending his complaint, he must not only address the Fourteenth Amendment pleading deficiencies identified above, but also allege that the disciplinary conviction which serves as the basis of this § 1983 suit has already been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487.

F.    Leave to Amend

Because the Court has determined that some of Plaintiff's claims survive the sua sponte screening process, the Court will give Plaintiff the opportunity to either:  (1) notify the Court of the intent to proceed with his Eighth Amendment claims against Sanchez; or (2) file an amended pleading correcting all the deficiencies of pleading identified by the Court in this Order.  Plaintiff must choose one of these options within forty-five (45) days from the date this Order is filed.  If Plaintiff chooses to proceed as to his claims against Sanchez only, the Court will issue an Order directing the U.S. Marshal

to effect service of his Complaint on Sanchez and dismiss the remaining claims and defendants.

**III.    Conclusion and Orders**

For the reasons explained, the Court:

1.    **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2.    **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's trust account the $10.84 initial filing fee assessed, if those funds are available at the time this Order is executed, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4.    The Court **DISMISSES** all claims against Defendants Owens, Silva, Miranda, and Pollard for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

5.    The Court **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either:  (1) notify the Court of the intention to proceed with the claims against Sanchez only; or (2) file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading

1  may be "considered waived if not repled.").

2          6.       The Clerk of Court is directed to mail Plaintiff a court approved civil rights

3  complaint form to use if he chooses to file an amended pleading.

4          **IT IS SO ORDERED**.

5  Dated:  October 27, 2020

6                                        _____

7                                        Hon. Dana M. Sabraw
                                          United States District Judge

13